

**Signed and Filed: September 28, 2011**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                          ) Bankruptcy Case
                               ) No. 10-30428DM
FERNANDO SERPA,                )
                               )
               Debtor.         ) Chapter 7
_____)
MICHAEL FARNHAM,               ) Adversary Proceeding
                               ) No. 10-3098DM
                     Plaintiff,)
                               )
v.                             )
                               )
FERNANDO SERPA,                )
                               )
                    Defendant.)
_____)
```

**MEMORANDUM DECISION ON OBJECTION TO DISCHARGE**

**I. FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff, Michael Farnham ("Farnham"), filed an amended complaint against debtor Fernando Serpa ("Serpa") and Does 1-10 on September 7, 2010, seeking to determine dischargeability under section 523(a)(2)(A)[2] and to deny discharge to Serpa under sections 727(a)(2)(A), 727(a)(3), and 727(a)(4)(A). The court bifurcated the section 523 and 727 actions on October 29, 2010.

---

[1] This Memorandum Decision constitutes the court's findings of fact and conclusions of law pursuant to Rule 7052(a).

[2] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-1-

After extended discovery disputes, the court conducted a trial on the section 727 claims on August 29, 2011. Appearances were noted on the record. The court orally indicated that it would enter a judgment on partial findings, dismissing the section 727(a)(2)(A) and 727(a)(3) claims when Farnham failed to put forward any evidence to support those claims. The court took the 727(a)(4)(A) matter under submission. For the reasons stated below, the court will deny discharge to Serpa.

Serpa holds a J.D. from George Washington University and has worked as a diversity consultant for various large companies. Most recently he collects unemployment and has a small diversity consulting company and a massage company. Serpa has three real properties, one in Texas and two in San Francisco (the Castro Street property and the 7th Street property). Serpa and Farnham were romantically involved and lived together in the Castro Street property. By any account it has been a messy break-up: Farnham is involved in this bankruptcy case as an unsecured creditor and there is a pending action in state court related to restraining orders and investments Farnham made in the Castro Street property, among other issues.

Serpa filed a voluntary petition for Chapter 7 bankruptcy and initially filed all schedules on February 8, 2010. Over the course of the bankruptcy case Serpa has filed eight amendments to his schedules and his statement of financial affairs ("SOFA"). The first and second of these amendments were filed on March 1, 2010, approximately one month after the petition. Both amendments were to Schedule J, adjusting the amount of taxes paid on a piece of real property from $0 to $850, and subsequently adding a $380

-2-

Case: 10-03098    Doc# 72    Filed: 09/28/11    Entered: 09/30/11 11:43:55    Page 2 of 11

payment for a third deed of trust on real property located in Texas (bringing total installment payments from $3,724 to $4,104).

Serpa's section 341 meeting of creditors was held approximately two weeks later on March 17, 2010. Farnham attended the meeting and asked Serpa questions regarding the status of various pieces of real property, a Persian rug relevant to the state court suit, and rental of the Texas Property. (Exhibit Z at 8-12). The Trustee suggested amending the SOFA based on Serpa's answers to these questions to include this rental income. (Exhibit Z at 12). Serpa filed a third amendment that day, adjusting Schedule I, the SOFA, and the means-test calculation. In this amendment Serpa increased income from real property in Schedule I by $425 (from $3,675 to $4,100), and added rental income disclosed in the SOFA totaling $68,500 on three properties from 2008 to 2010 (as of March 17, 2010). Rental income for the Castro Street property was divided into two groups for 2009 and 2010: roommate and non-roommate. The total 2009 rental figures disclosed for rental income indicated a monthly income from real property of approximately $3,292 ((13,200 + 5,500 + 4,800 + 16,000)/12).

Approximately one week later, Serpa filed a fourth amendment, this time to both Schedule G and the SOFA. Serpa added an unexpired lease agreement on the Texas property to Schedule G and added $2,100 in freelance earnings from 2008 and 2009 to the SOFA. The fifth amendment was filed approximately three weeks later on April 11, 2010, this time adjusting the SOFA, again, and Schedule B to reflect settlement proceeds from yet another suit (this one in small claims court) between Farnham and Serpa.

-3-

Case: 10-03098    Doc# 72    Filed: 09/28/11    Entered: 09/30/11 11:43:55    Page 3 of 11

Farnham next filed a motion for a 2004 Examination on April 16, 2010. On June 3, 2010, one day before the 2004 Examination, Serpa filed his sixth amendment, adjusting Schedule I and the Statement of Current Monthly Income and Means Test Calculation. Relevant changes include an increase in income from real property to $4,500 per month (versus $3,675 originally and $4,100 in the third amendment). Also on the same day, June 3, 2010, Farnham's lawyers examined Richard Buckner ("Buckner"), a subsequent romantic partner of Serpa. (Exhibit V). In this meeting Buckner explained a "net zero" arrangement that he had with Serpa where he paid different expenses, including the mortgage, for Serpa and was subsequently repaid by various methods. Id. at 7-19. These methods included primarily cash, but also at least one renter at the Castro Street property making checks out directly to Buckner instead of Serpa. Id.

This sixth amendment also included an adjustment to Schedule I to include $300 per month for income received as a masseur. This income was previously brought to Serpa's attention in his December 3, 2009 deposition, approximately two months before filing his petition. (Exhibit C at 20). Upon being asked about his work as a masseur at the deposition, Serpa invoked his 5th Amendment Privilege against self-incrimination. Id. at 20-22.

The 2004 Examination proceeded on June 4, 2010 and Serpa indicated upon questioning that he did not actually have a roommate separate from the vacation rental income for the Castro Street property, as indicated in the March 17, 2010 amendment, and that he incorrectly filed duplicate numbers for the Castro Street property. (Exhibit DD at 12-15). Serpa asserted that he did not

have a roommate at the property, despite having testified in the 341 hearing less than three months before that he had a roommate for approximately 6 months at the property.[3] (Exhibit DD at 12-15, Exhibit Z at 4). He was further unable to reconcile the numbers disclosed in the SOFA with a monthly breakdown of rent received and stated that he was not sure how he came up with the rental income numbers. (Exhibit DD at 25). Upon further questioning Serpa also admitted that he used 401(k) accounts cashed in 2008 and 2009 (but not disclosed on the SOFA) to pay for a remodel of the Castro Street property. Id. at 34.

Serpa filed his last two of the eight amendments, again to the SOFA, a few days after this 2004 Examination on June 10, 2010. Serpa removed rental income from a roommate on the Castro Street property and adjusted the 2009 number for income. He also, for the first time since filing for bankruptcy protection, disclosed ten payments made to creditors in the 90 days preceding bankruptcy and three financial accounts that had been closed within one year preceding bankruptcy. These closed financial accounts corresponded to the retirement accounts mentioned in the 2004 Examination, with balances totaling over $56,000. (see Exhibit DD at 34). Without listing every payment made to a creditor, payments to unsecured creditors totaled $17,426 and payments to

---

[3] Serpa's assertion that he was merely confused by the Trustee's question at the 341 meeting is unconvincing given the clarity of the question: "All right, in the last year have you received any, other than a roommate, have you received any rental income for the Tenants in Common property?" (Exhibit Z at 5). The Trustee again asked "All right, and have you rented the property out at all in 2009 through that source other than...not including the roommate?" with a clear response from Serpa of "Yes we have also...about $2,000." Id. at 6.

-5-

secured creditors totaled $14,649. Two payments to unsecured creditors ($3,000 to a lawyer and $7,762 to a Wells Fargo credit card balance) completely paid off the balance owed to those creditors. Serpa's explanations for previously omitting these payments and accounts were that he was neither good at arithmetic nor keeping records.

## II. DISCUSSION

To deny Serpa's discharge under section 727(a)(4)(A),[4] Farnham must show: (1) Serpa made a false statement or omission, (2) regarding a material fact, and (3) did so knowingly and fraudulently. Khalil v. Developers Surety and Indemnity Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007). "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." Id. (quoting Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999)).

At first blush, and each taken individually, the omissions and misstatements outlined above may seem minor. However the totality of circumstances, including the pattern of omissions and suspicious timing of corrections, lead the court to conclude that Serpa knowingly and fraudulently made these false oaths.

**(1) False Statement or Omission**

"A false oath may involve a false statement or omission in the debtor's schedules." Roberts v. Erhard (In re Roberts), 331

---

[4] Under section 727(a)(4)(A) "[t]he court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account."

-6-

B.R. 876, 882 (9th Cir. BAP 2005). "The same is true for statements made by the debtor when being examined at meetings of creditors." Phillips v. United States Trustee (In re Phillips), No. WW-09-1114-MoMkH, 2010 WL 6259975, at *6 (9th Cir. BAP April 6, 2010). Serpa made a false statement by omitting a multitude of facts from the bankruptcy schedules. Among other things, he disclosed the wrong numbers two times for income in Schedule I. Furthermore, it is undisputed that he omitted all of the retirement accounts and payments to creditors in the SOFA in the petition and the first six amendments filed.

**(2) Material Fact**

"A false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." Wills, 243 B.R. at 62. It may be material "even in the absence of direct financial prejudice to creditors." Roberts, 331 B.R. at 883.

In Serpa's case, these misstatements were to the magnitude of thousands of dollars and potentially hindered the discovery and disposition of Serpa's property. For example, rental payments received could increase the size of the estate. Similarly, information regarding preferential payments to creditors may allow the Trustee to recover those payments and increase the estate to the benefit of other creditors. Finally, closed financial accounts may aid the Trustee in discovering attempts to hide assets from creditors or past financial transfers. The false oaths here were material because rental payments received on real property, potentially preferential payments to creditors, and

-7-

recently closed financial accounts all have a direct bearing on the bankruptcy estate.

**(3) Knowingly and Fraudulently**

"A person acts knowingly if he or she acts deliberately and consciously." Roberts, 331 B.R. at 883. "Recklessness does not measure up to the statutory requirement of 'knowing' misconduct." Id. at 884. Serpa consciously made the misrepresentations. Serpa amended income from rents two times, meanwhile he was collecting rents on these properties. His claim that he was confused about the difference between a roommate and vacation renters is outweighed by his legal training. Serpa also neglected to disclose his massage business meanwhile collecting $300 a month from the business, only to suspiciously disclose that income immediately before his 2004 Examination and on the same day as Buckner's examination. Any claim that he forgot about this income is further outweighed by the fact that this income was a subject of his deposition two months before filing. Finally, that Serpa had to review financial records to file his petition and the first couple of amendments indicates that he would have had to continually turn a blind eye to the information in these records in order to forget about so much information.

Similarly, claiming to forget about over $56,000 in retirement accounts closed and, at least partially, used to fund a remodel of the Castro Street property is outweighed by his legal training and the fact that he was reaping the benefits of the remodel by renting out multiple rooms in the property throughout bankruptcy. Finally, it is incomprehensible that Serpa could forget about over $17,000 in payments made to unsecured creditors

-8-

meanwhile reviewing his financial affairs in order to make the six prior amendments. Serpa was in severe financial distress leading up to bankruptcy, indicating that such large payments to creditors would have made a lasting impression in his mind.

A debtor acts fraudulently if (1) he or she makes representations, (2) that at the time he or she knew were false, (3) with the intention of deceiving creditors. Khalil, 379 B.R. at 173. "Recklessness can be probative of fraudulent intent." Id. "Intent usually must be proven by circumstantial evidence or inferences drawn from the debtor's course of conduct. . . Recklessness can be part of that circumstantial evidence." Id. at 174.

There is a significant pattern of recklessness in Serpa's extensive amendments throughout the bankruptcy process. Serpa contends that he made mistakes, and that his decision to file amendments demonstrates a lack of fraudulent intent. While true that he filed amendments, the timing of four of these amendments is suspicious. One amendment was made directly before the 2004 Examination and on the same day as Buckner's examination. Another amendment was filed to correct omissions and misstatements directly after questioning by Farnham at the 341 hearing. Finally, the last two were filed when the 2004 Examination revealed additional information. Khalil emphasized that such disclosures can be considered fraudulent: "Debtor belatedly disclosed some of that income, when deposed about it, but that is not the same as disclosing it voluntarily." Khalil, 379 B.R. at 177. Furthermore, Phillips considered the suspicious timing of a debtor's decision to amend as evidence of fraudulent intent.

-9-

Case: 10-03098    Doc# 72    Filed: 09/28/11    Entered: 09/30/11 11:43:55    Page 9 of 11

Phillips, 2010 WL 6259975 at *8 (where debtor filed an amendment to include a policy claim days before the insurance company disclosed the claim to the Trustee).

Furthermore, "multiple omissions of material assets or information may well support an inference of fraud if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal." Khalil, 379 B.R. at 175 (quoting Garcia v. Coombs (In re Coombs), 193 B.R. 557, 565-66 (Bankr. S.D. Cal. 1996)). This is probably not the case for the 2008 and 2009 income disclosed in the SOFA because it is relatively consistent with an annualized amount of the first income figure disclosed in Schedule I.

However, Serpa did have an incentive to underestimate the income from real property and his massage business received at the time of bankruptcy in order to keep some payments for himself. Significant increases in income from real property were disclosed immediately after the section 341 meeting and immediately before the 2004 Examination. Serpa may have thought he could hide these payments because of his arrangement with Buckner wherein Buckner sometimes took third party checks or cash as payment for Serpa's debts to him, thereby keeping those transactions out of his records. Furthermore, Serpa probably wanted to avoid disclosing massage income to keep that money out of the estate and to avoid any culpability for fraudulently collecting the income.

Finally, regarding the omitted closed financial accounts worth over $56,000, no coherent motive in hiding those closures is

Case: 10-03098    Doc# 72    Filed: 09/28/11    Entered: 09/30/11 11:43:55    Page 10 of 11

readily ascertainable. However, due to the late disclosure of those accounts both the Trustee and creditors were limited in their abilities to follow-up on any potential mis-use of those funds. Serpa has repeatedly failed to give clear, straightforward answers regarding his finances, and the use of money in these closed accounts is no exception. This case has been replete with omissions and misstatements coupled with suspicious timing and elusive explanations. Regardless of what Serpa may have thought or wanted to avoid, the totality of circumstances lead the court to find that Serpa acted knowingly and fraudulently.

### III. CONCLUSION

Serpa knowingly and fraudulently disclosed incorrect numbers for his monthly income and omitted information regarding his massage income, closure of his retirement accounts prior to bankruptcy, and payments to creditors prior to bankruptcy. These misstatements and omissions were material and were false oaths within the meaning of section 727(a)(4)(A). Based on the foregoing reasons, Serpa's discharge shall be denied under section 727(a)(4)(A). The court is hereby entering a judgment consistent with this Memorandum Decision.[5]

**END OF MEMORANDUM DECISION**

---

[5] If discharge were granted, Farnham's section 523 claim could be separately prosecuted. However, because discharge has been denied this section 523 claim will be dismissed as moot.